## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

THI OF NEW MEXICO AT HOBBS
CENTER, LLC, THI OF NEW MEXICO,
LLC, FUNDAMENTAL ADMINISTRATIVE
SERVICES, LLC, and FUNDAMENTAL
CLINICAL CONSULTING, LLC,

        Plaintiffs,

v.                                   No. Civ. 11-537 LH/CG

LILLIE MAE PATTON, as the personal
representative of the Estate of Willie
George Patton, Sr., deceased,

        Defendant.

## MEMORANDUM OPINION AND ORDER

On July 1, 2011, Defendant Lillie Mae Patton, as the personal representative of the Estate of Willie George Patton, Sr., (hereinafter "Defendant"), filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 10), alleging that complete diversity among the parties does not exist, and alternatively, that the *Colorado River*[1] abstention doctrine requires the federal court proceeding to be dismissed.  The Court, having considered the motion, briefs, arguments, relevant law, and otherwise being fully informed, concludes that this Court has subject matter jurisdiction over this case and an obligation to exercise it, and thus, Defendant's motion to dismiss will be denied.

## I.  FACTUAL BACKGROUND

The facts relevant to this motion are undisputed.  The deceased, Willie George Patton, was a resident at Hobbs Center, a nursing home in Hobbs, New Mexico.  He entered the center in June

---

[1]*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

2007 and left when he was hospitalized on June 13, 2010; he died shortly thereafter.  Mr. Patton's personal representative and former spouse, Lillie Mae Patton, brought a negligence suit on behalf of Mr. Patton's estate in the First Judicial District Court, State of New Mexico.  Due to the alleged existence of an arbitration agreement signed by Mr. Patton's step-daughter, purportedly pursuant to a Power of Attorney, and Hobbs Center, some of the state court defendants have brought a Complaint to Compel Arbitration against Ms. Patton in federal court under the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA").

Willie George Patton was a resident of Hobbs, New Mexico, and is deceased.  Lillie Mae Patton is also a New Mexico citizen.

There are four plaintiffs in the case before this Court: (1) THI of New Mexico at Hobbs Center, LLC ("Hobbs"); (2) THI of New Mexico, LLC ("THI-NM"); (3) Fundamental Administrative Services, LLC ("FAS"); and (4) Fundamental Clinical Consulting, LLC ("FCC"), collectively "Plaintiffs."  Hobbs is a Delaware limited liability company ("LLC") whose sole member is Plaintiff THI-NM.  THI-NM is also a Delaware LLC whose sole member is THI of Baltimore, Inc., which is a Delaware corporation with its principal place of business in Maryland. The third plaintiff, Fundamental Administrative Services, LLC ("FAS"), is a Delaware LLC whose sole member is Fundamental Long-Term Care Holdings, LLC ("FLTCH"), which is also a Delaware LLC but which is not itself a party to this action.  FLTCH has two members, who are both real persons who are citizens of New York and New Jersey.  Lastly, Plaintiff FCC is a Delaware LLC whose sole member is also THI of Baltimore.

The state court action includes additional defendants who are not parties to the federal action. According to the allegations in the state court complaint, the other state court defendants are Rubin Schron, an individual who owns, operates, manages, and/or maintains Hobbs Center and the state-

2

defendant corporations; Leonard Grunstein, an individual who owns, operates, manages, and/or controls Hobbs Center and the state-defendant corporations; Murray Forman, an individual who owns, operates, manages, and/or maintains Hobbs Center and the state-defendant corporations; THI Holdings, LLC, a corporation that owns, operates, manages, and/or controls Hobbs Center; Abe Briarwood Corporation, a corporation that owns Hobbs Center and entered into an agreement with one or more THI or Fundamental companies; and David Stroud, the Administrator of Hobbs Center. (*See* Compl, Ex. D (Doc. 1-4) ("State Court Complaint") at 3-7.) David Stroud is the only non-federal party relevant to the current dispute.  Mr. Stroud was the administrator of Hobbs Center at all times relevant to the negligence suit, and his "business home address" is in Hobbs, New Mexico. (State Court Complaint (Doc. 1-4) ¶ 21.)

Defendant filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 10) on July 1, 2011.  Defendant argues that Plaintiffs have "self-selected certain parties" for the purposes of the federal lawsuit and intentionally excluded David Stroud, who is a New Mexico resident. Defendant thus urges this court to consider David Stroud's citizenship for the purposes of establishing diversity.  Second, Defendant argues that the court should adopt the corporation model of citizenship toward LLCs, which views an entity as a citizen of those states where its principal places of business are located and where it is incorporated.  Adoption of the corporation model would result in both Hobbs Center and THI-NM being deemed New Mexico citizens, and thus destroying diversity, since Hobbs Center's only place of business is in Hobbs, New Mexico, and since THI-NM exists only to operate nursing homes within New Mexico.  Defendant alternatively argues that, even if this Court has subject matter jurisdiction, the *Colorado River* abstention doctrine compels dismissal of this federal case.

In response, Plaintiffs argue that Defendant errs in applying the corporation model of

citizenship to LLCs and instead maintains that the partnership model should be applied.  Relying

on extensive supporting authority, Plaintiffs state that the citizenship of LLCs is to be determined

based upon the citizenship of all of its members, as would be done if Plaintiffs were partnerships.

Plaintiffs argue that Hobbs Center, THI-NM, and FCC are all citizens of both Delaware and

Maryland, FAS is a citizen of New York and New Jersey, and Defendant is a New Mexico citizen.

Plaintiffs therefore contend that, because the LLCs' members are not New Mexico citizens, diversity

exists amongst the parties, and this court has subject matter jurisdiction.  Finally, Plaintiffs assert

that the *Colorado River* abstention doctrine is inapplicable to this case because the federal and state

cases are not parallel proceedings, and in any event, the *Colorado River* factors here do not

demonstrate any "exceptional circumstance" that merits abstention.

## III.   ANALYSIS

### A.   Diversity Jurisdiction

Plaintiffs, as the parties asserting jurisdiction, bear the burden of establishing subject matter

jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2005).  Section 4 of the Federal

Arbitration Act provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate
> under a written agreement for arbitration may petition any United States district
> court which, save for such agreement, would have jurisdiction under Title 28, in a
> civil action or in admiralty of the subject matter of a suit arising out of the
> controversy between the parties, for an order directing that such arbitration proceed
> in the manner provided for in such agreement.

9 U.S.C. § 4.  The FAA itself, however, does not grant the federal courts jurisdiction over arbitration

disputes; instead, the Act requires an "independent jurisdictional basis" for bringing the suit before

the federal court.  *Hall Street Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008) (citation

omitted).  This foundational jurisdiction exists only if the parties' dispute is rooted in a federal

question or diversity of the parties.  *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983).  *See also* 28 U.S.C. §§ 1331-32.

Plaintiffs contend that diversity jurisdiction is present here.  The Constitution provides that the "judicial Power shall extend to . . . Controversies . . . between Citizens of different States."  U.S. Const. art. III, § 2.  "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between — citizens of different States."  28 U.S.C. § 1332(a).  "Statutes conferring diversity jurisdiction are to be strictly construed."  *Crowley v. Glaze*, 710 F.2d 676, 677 (10th Cir. 1983).

### 1.    The partnership model of citizenship applies to LLCs.

While the Tenth Circuit has not addressed the issue of whether the corporation or partnership model of citizenship applies to LLCs, other circuits agree that the "[c]itizenship of an LLC is determined by looking through the firm to individual members, irrespective of the entity nature of the firm for state law."  Larry Ribstein, *Federal Suits: Diversity Jurisdiction,* 1 Ribstein and Keatinge on Ltd. Liab. Cos. § 10:6 (2011).  As the Ninth Circuit explained, "LLCs resemble both partnerships and corporations," but "every circuit that has addressed the question treats them like partnerships for the purposes of diversity jurisdiction." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  *See also Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006) (applying partnership model in holding that an LLC's citizenship is dependent upon the citizenship of all of its members); *General Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004) (same); *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.,* 357 F.3d 827, 828-829 (8th Cir. 2004) (same); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (same); *Handelsman v. Bedford Village Assocs. Ltd. P'ship,* 213 F.3d 48, 51-52 (2d Cir. 2000) (same);

*Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) (same).

This dominant approach stems from the Supreme Court's foundational holding in *Carden v. Arkoma Assocs.*, 494 U.S. 185, 189 (1900), wherein it demonstrated its "consistent refusal to extend the corporate citizenship rule to non-corporate entities, including those that share some of the characteristics of corporations." *Johnson*, 437 F.3d at 899 (citing *Carden*, 494 U.S. at 189 (refusing to extend corporate citizenship rule to limited partnership associations)). This "*Carden* rule and its application to LLCs seem thoroughly entrenched, and the courts are becoming impatient with parties that do not heed it." Ribstein, *supra*. *See also Andreoni v. Forest City Enterprises, Inc.*, 660 F.Supp.2d 254, 259 (D.Conn. 2009) (internal quotations and citations omitted) (citing the *Carden* rule in holding that "for unincorporated artificial entities the general and oft-repeated rule is that the citizenship . . . is determined not by the entity's principal place of business, for it does not have one . . . but rather depends on the citizenship of all the members, the several persons composing such association, and each of its members").

Although Defendant in this matter argues that the "principal place of business" analysis that accompanies the corporation model of citizenship should apply here, there is inadequate case law to support this approach. None of the cases cited by Defendant apply the "principal place of business" analysis to LLCs or similar entities. In contrast, Plaintiffs cite extensive case law to illustrate the applicability of the partnership model of citizenship, which is applied by virtually every other circuit that has addressed this issue. Thus, the rule that LLCs should be viewed as partnerships is rapidly approaching the status of settled law, and this Court will not deviate therefrom.

Applying the partnership model to the case at hand, Plaintiffs FCC, THI-NM, and Hobbs Center are all citizens of both Delaware and Maryland. The remaining plaintiff, FAS, is a citizen of both New York and New Jersey. Defendant is a citizen of New Mexico. Accordingly, diversity

jurisdiction between the named parties exists under the partnership model.

      **2.**     **For the purposes of determining subject matter jurisdiction, the Court will not consider the citizenship of David Stroud.**

Defendant nevertheless asserts that David Stroud is an "essential" party to this case and that this Court must consider his citizenship when determining jurisdiction. This exact issue was addressed in *Northport Health Services of Arkansas, LLC v. Rutherford*, 605 F.3d 483 (8th Cir. 2010), wherein the Eighth Circuit held that non-diverse nursing home administrators who were named as defendants in the underlying state tort action were not necessary and indispensable parties in the nursing home's federal court action to compel arbitration, and thus their citizenship did not destroy diversity jurisdiction. *See id.* at 491. In *Rutherford*, the personal representatives of two nursing home patients filed a tort claim against the nursing home and its administrators in an Arkansas state court. *Id.* at 485. The nursing home filed a federal action to compel arbitration under the FAA, in which the administrators did not join as parties. *Id.* The federal action was filed based upon diversity of citizenship, which existed exclusively in the federal action, since the nursing home administrators were allegedly Arkansas citizens. *Id.* Like Defendant in this case, the federal defendants in *Rutherford*, relying on *Vaden v. Discover Bank*, 129 S.Ct. 1262 (2009), urged the court to "look through" the federal complaint to consider the citizenship of the non-diverse administrators who were parties in the underlying state court action. *See id.*

The Eighth Circuit, however, concluded that *Vaden*'s holding to "look through" a § 4 petition under the FAA to the parties' underlying substantive controversy was limited to § 4 petitions based upon federal question jurisdiction. *See id.* at 488. The court determined that *Vaden* did not implicitly overrule the pre-*Vaden* circuit decisions that were unanimous in looking only to the citizenship of the named parties in the federal action. *Id.* at 489. Instead, the *Rutherford* court

relied on the Supreme Court's decision in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983):

> In [*Moses H. Cone*], the Supreme Court stated that the independent basis of federal jurisdiction was diversity of citizenship.  But it did not discuss that threshold issue, despite noting the presence of a non-diverse party who made the parallel state court action non-removable.   460 U.S. at 7 & n. 4, 103 S.Ct. 927.   In deciding that abstention principles did not require a stay of the federal action, and affirming the order compelling arbitration, the Court explained, "Although the Hospital will have to litigate the arbitrability issue in federal rather than state court, that dispute is easily severable from the merits of the underlying disputes." *Id.* at 20-21, 103 S.Ct. 927.
>
> *Moses H. Cone* is factually on all fours with these cases. Even if no party challenged diversity jurisdiction, that the Supreme Court did not even discuss the issue is telling because in other cases it has noted that federal courts are obligated to consider lack of subject matter jurisdiction sua sponte.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), citing *Great So. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453, 20 S.Ct. 690, 44 L.Ed. 842 (1900). Thus, the representatives' contention requires us to assume both that the Court overlooked a serious diversity jurisdiction issue in *Moses H. Cone* and then implicitly overruled *Cone*'s jurisdictional underpinnings in *Vaden*. This is contrary to well-established principles.

*Rutherford*, 605 F.3d at 490.  The *Rutherford* court therefore concluded "that diversity of citizenship is determined in these cases by the citizenship of the parties named in the proceedings before the district court, plus any indispensable parties who must be joined pursuant to Rule 19."  *Id.* at 491.

The Eighth Circuit, in turning to the indispensable party issue, concluded that the non-diverse nursing home administrators were not necessary parties to the federal arbitration action in light of the long-standing rule that it is not necessary to name all joint tortfeasors as defendants in a single lawsuit.  *Id.* (citing *Temple v. Synthes Corp.*, *Ltd.*, 498 U.S. 5, 7 (1990)).  The *Rutherford* court noted that "every circuit to consider the issue has concluded that a party joined in a parallel state court contract or tort action who would destroy diversity jurisdiction is not an indispensable party under Rule 19 in a federal action to compel arbitration."  *Id.* (collecting cases).  The Eighth Circuit therefore found that the district court had diversity jurisdiction over the arbitration case.  *See*

*id.* at 491-92. *See also International Asset Management, Inc. v. Holt*, 487 F.Supp.2d 1274, 1280 (N.D.Okla. 2007) (relying on *Moses H. Cone* in holding that, although non-diverse vice president was properly named as a defendant in the state action, district court had subject matter jurisdiction over proceeding to compel arbitration of claims in underlying state lawsuit based on complete diversity of named parties to federal proceeding).

This Court finds the reasoning of the Eighth Circuit in *Rutherford* persuasive and adopts it here. Because the named parties are diverse, this Court must determine whether Mr. Stroud is an indispensable party under Rule 19. Rule 19 provides that a person whose joinder will not deprive the court of subject-matter jurisdiction must be joined if either, in that person's absence, the court cannot accord complete relief among the existing parties, or the person claims an interest relating to the subject of the action and disposing of the action in the person's absence may impair or impede the person's ability to protect the interest or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. Fed. R. Civ. P. 19(a). Clearly, Rule 19(a) does not provide a vehicle here for adding Mr. Stroud to this case because his addition would deprive this Court of diversity jurisdiction. Rule 19(b), however, further states that, if a person who is required to be joined if feasible cannot be joined, the court must determine whether the action should proceed among the existing parties or be dismissed. Fed. R. Civ. P. 19(b).

Defendant neglected to offer any explanation for how and why Mr. Stroud is essential, other than that he was named in the underlying state court case. That is not enough. Mr. Stroud is not a necessary or indispensable party under Rule 19 because this Court can administer complete relief – an order compelling arbitration – among the existing parties and Mr. Stroud himself is not claiming an interest in this arbitration action that will be impaired by his absence. Although failing to dismiss this case may result in piecemeal litigation, that factor alone is not compelling enough

to find Mr. Stroud to be an indispensable party.  *Cf. Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 446 (2d Cir. 1995) (holding that, in determining whether diversity jurisdiction exists in petition to compel arbitration, district court was correct in looking only to citizenship of parties in action before it – parties who signed arbitration agreement – and that non-diverse agents in underlying state case were not indispensable parties, as any potential prejudice resulting from piecemeal litigation is overcome by FAA's strong bias in favor of arbitration).  This Court therefore properly limits its determination of whether diversity jurisdiction exists to the named parties in these proceedings. Given this Court's determination that the named parties are indeed diverse, jurisdiction is proper.

### B.    *Colorado River* Abstention

Defendant nevertheless argues that, even if there is jurisdiction, this Court should abstain from exercising its jurisdiction.  The *Colorado River* doctrine controls when determining "whether a district court should have stayed or dismissed a federal suit pending the resolution of a parallel state court proceeding."  *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999).  The doctrine springs from judicial economy concerns that may justify deferral of a federal case when pending state litigation will resolve the issues in the federal case.  *Id.*  In light of a federal court's "virtually unflagging obligation" to exercise its jurisdiction, the doctrine is to be applied only when "the clearest of justifications . . . warrant[s] dismissal" and under "exceptional" circumstances. *Rienhardt*, 164 F.3d at 1303 (quoting *Colorado River*, 424 U.S. at 817-18, 819).

In ruling on whether the *Colorado River* doctrine applies, a court must first determine the threshold issue of whether the state and federal proceedings are parallel.  *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994).  If the suits are parallel, the court considers whether "exceptional circumstances" exist that compel abstaining from the matter.  *See id.*

### 1.    The state and federal proceedings do not appear to be parallel.

"Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* at 1081 (quoting *New Beckley Mining Corp. v. Int'l Union, UMWA,* 946 F.2d 1072, 1073 (4th Cir. 1991)).   The circuits are split as to the proper analysis of parallel proceedings. *See id.*   The Tenth Circuit rejects the alternative approach used by the Second and Seventh Circuits of evaluating what claims and parties *could have been* brought in the state court against those claims that *could have* been brought in the federal court to determine if the proceedings are parallel.   *Id.* (citing *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1308 (7th Cir. 1988); *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 359 (2d Cir. 1985)).   Instead, the Tenth Circuit has held that the appropriate "approach is to examine the state proceedings *as they actually exist* to determine if they are parallel to the federal proceedings."   *Id.* (emphasis in original) (following *McLaughlin v. United Va. Bank*, 955 F.2d 930, 935-956 (4th Cir. 1992); *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984)).   The parallel state-court action must be an adequate vehicle for the complete and prompt resolution of the issue between the parties in order to invoke the *Colorado River* doctrine.   *Id.*

Defendant asserts that this federal case constitutes "duplicative litigation" and is a parallel proceeding because the federal action was filed during the pendency of the state case.   (Def.'s Mot. to Dismiss (Doc. 10) at 5-6.)   Additionally, Defendant argues that the issues and parties are "substantially the same" in the two cases.   (*Id.* at 6).   Defendant relies on Judge Browning's holding in *THI of New Mexico at Las Cruces v. Fox*, 727 F.Supp.2d 1195 (D.N.M. 2010), which addressed the same plaintiffs and arbitration clause as this case and held that abstention was proper.   (Def.'s Mot. to Dismiss (Doc. 10) at 8.)

The *Fox* case, however, is distinguishable.   Abstention was proper there because the nursing home had already moved to compel arbitration in state court, the trial court denied the motion, the

11

New Mexico Court of Appeals reversed and remanded the case back to the trial court, the trial court compelled the parties to arbitrate, and a motion to reinstate the state action on the basis that the arbitration agreement was unconscionable was pending before the state trial court. *See id.* at 1198-99. The Honorable James O. Browning concluded that the cases were parallel because they both involved identical parties and the identical issue of whether the arbitration agreement was enforceable. *Id.* at 1209. The extensive litigation of the arbitration issue in the state court action distinguish the *Fox* case from this one. Although the arbitration issue *could* be raised in the underlying state case and the state-court action is an adequate vehicle to completely and promptly resolve the arbitration issue between these same parties, the arbitration issue has not yet been raised there, and as the Tenth Circuit has ruled, this court is to examine the proceedings as they actually exist. This Court need not, however, conclusively decide whether the proceedings are parallel, because it is not convinced that exceptional circumstances are present to warrant abstention in any event.

### 2.    Exceptional circumstances do not exist to warrant abstention.

A court must consider the following non-exclusive list of factors to decide if "exceptional circumstances" exist to warrant abstention: (1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) the vexatious or reactive nature of either the federal or state action; (6) whether federal law applies; (7) the adequacy of the state-court action to protect the federal plaintiff's rights; and (8) whether the party opposing abstention has engaged in impermissible forum-shopping. *See Maulding*, 16 F.3d at 1082. No factor is independently dispositive, and the weight given to each factor is left to the court's discretion. *Id.*

Balancing the relevant factors in this case weighs in favor of the Court exercising its jurisdiction.  Neither court has assumed jurisdiction over any property, so the first factor does not weigh in either party's favor.  The federal forum is not notably inconvenient to Defendant, given that defense counsel's offices are located in Albuquerque.  The second factor thus weighs in favor of Plaintiffs.

As to the third factor, "[p]iecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results."  *Fox*, 727 F.Supp.2d at 1208 (quoting *American Int'l Underwriters, Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)).  "Concerns about piecemeal litigation 'should focus on the implications and practical effects of litigating suits deriving from the same transaction in two separate fora.'"  *Id.* (quoting *Gonzalez v. Cruz*, 926 F.2d 1, 4 (1st Cir. 1991)).  Although not all parties from the state action are included in the federal action, such that the resolution of the arbitration issue for the federal parties may still leave related issues unresolved, the arbitration issue itself is easily severable from the merits of the underlying state court action.  *Cf. Moses H. Cone*, 460 U.S. at 20-21 (noting that, even if a litigant is forced to litigate an arbitration issue in federal rather than state court, "that dispute is easily severable from the merits of the underlying disputes").  The concern regarding duplication of efforts and inconsistent results here is small because, unlike the situation in *THI of New Mexico at Las Cruces, LLC v. Fox*, the arbitration issue has not been raised and litigated in the state case.  Although some of the state-court defendants not named in this federal litigation may themselves invoke their own arbitration rights, it does not appear that they have yet done so, and the mere possibility that they may invoke these rights later is not dispositive of this factor.  Moreover, any slight inefficiency experienced by Defendant by resolution of the arbitration issue in federal court rather than state court "occurs because the relevant federal law *requires* piecemeal resolution when

13

necessary to give effect to an arbitration agreement." *Moses H. Cone*, 460 U.S. at 20 (emphasis in original). The third factor therefore weighs in favor of federal jurisdiction.

The fourth factor – the order in which the courts obtained jurisdiction – also weighs in favor of retaining jurisdiction. In *Moses H. Cone*, the Supreme Court explicitly held that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id.* at 21. Although the negligence complaint was filed first in state court, the arbitration issue was first and, so far, has only been raised in the federal court. This Court has therefore made more progress on the arbitration issue than the state court. In addition, the state court has stayed its proceedings as to Plaintiffs. Finally, the complaint filed in state court only preceded the federal court complaint by approximately two months.

The fifth factor – the vexatious or reactive nature of either the federal or state action – and the eighth factor – forum-shopping – do not weigh in favor of either party. Although Plaintiffs certainly could have litigated the arbitration issues in state court, the Court refuses to find filing this suit vexatious, reactive, or impermissible forum-shopping given that the FAA expressly provides a federal forum for the resolution of arbitration issues such as those raised here. This case is not one in which the plaintiffs filed this suit after litigating the arbitration issues extensively in state court and after fearing a negative result. Moreover, although Plaintiffs may have forum-shopped, albeit not impermissibly, arguably Defendant may have forum-shopped the underlying state case in adding Mr. Stroud, a non-diverse defendant.

The sixth factor, whether federal law applies, is a thorny issue that also does not clearly weigh in favor of either party. The FAA creates "a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." *Moses H. Cone*, 460 U.S. at 25 n.32. Under the FAA, arbitration agreements may be invalidated by generally applicable contract defenses, such

14

as fraud, duress, or unconscionability.  *Rent-A-Center, West, Inc. v. Jackson*, __ U.S. __, 130 S.Ct.

2772, 2776 (2010).  State contract law will thus generally apply so long as the state law does not

construe an arbitration agreement in a manner different from any other contract; in such a case, the

state law will be preempted by the FAA.  *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1287

(10th Cir. 1997).  Furthermore, because Congress in enacting the FAA did not intend to force parties

to arbitrate in the absence of an agreement, the "existence of an agreement to arbitrate is a threshold

matter which must be established before the FAA can be invoked."  *Id.* at 1286-87.  Consequently,

a federal court looks to state law principles of contract formation to determine whether an agreement

to arbitrate has been reached.  *Id.* at 1287.  In this case, the parties have raised numerous issues,

some of which involve only state law, and others of which involve the overlay of federal law that

ensures arbitration clauses are not treated with disfavor.  The Court finds that, although the sixth

factor weighs slightly in favor of Defendant, its weight is not enough to tilt the scales in favor of

Defendant on the overall balancing test given the overlay of federal law.

        Finally, while the seventh factor – the adequacy of the state court action to protect the federal

plaintiff's rights – does weigh in favor of Defendant, the overall balance of the other factors weigh

heavily in favor of retaining jurisdiction, especially in light of a federal court's "virtually unflagging

obligation" to exercise its jurisdiction.  Consequently, this case does not present the exceptional

circumstances necessary to warrant abstention.

        **IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss for Lack of Subject

Matter Jurisdiction (**Doc. 10**) is **DENIED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**