## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

THI OF NEW MEXICO AT HOBBS
CENTER, LLC, THI OF NEW MEXICO,
LLC, FUNDAMENTAL ADMINISTRATIVE
SERVICES, LLC, and FUNDAMENTAL
CLINICAL CONSULTING, LLC,

       Plaintiffs,

v.                                                             No. Civ. 11-537 LH/CG

LILLIE MAE PATTON, as the personal
representative of the Estate of Willie
George Patton, Sr., deceased,

       Defendant.

## MEMORANDUM OPINION AND ORDER

On August 16, 2012, Defendant Lillie Mae Patton filed a Motion to Reinstate and Reconsider (Doc. 34), asking this Court under Federal Rule of Civil Procedure 60(b)(6) to reconsider and reverse its previous order compelling her to arbitrate her claims against Plaintiffs THI of New Mexico at Hobbs Center, LLC, and THI of New Mexico, LLC (collectively, hereinafter "THI Plaintiffs"). The Court having considered the motion, briefs, applicable law, and otherwise being fully advised, concludes that Defendant's motion should be granted.

## I.     BACKGROUND

The facts underlying this case are set out more fully in this Court's prior Memorandum Opinion and Order (Doc. 27) filed on January 3, 2012, which the Court incorporates but will not repeat fully here. In summary, this case arises from a personal injury lawsuit filed in the First Judicial District Court of New Mexico, *Patton v. Fundamental Long Term Care Holdings, LLC, et al.*, D-101-cv-2011-01388, (hereinafter the "State Court Action") by Lillie Mae Patton, as

personal representative of the estate of her husband, Willie George Patton, Sr.  Ms. Patton's state court complaint for negligence, negligent or intentional misrepresentation, and punitive damages is based on facts that arose out of the care provided to Mr. Patton while he was a resident at the Hobbs Center nursing home in Hobbs, New Mexico.  As part of the admission agreement paperwork to admit Mr. Patton into Hobbs Center, Linda Barry, Mr. Patton's step-daughter, signed a standardized Arbitration Agreement that is at the heart of this federal case.  After Ms. Patton sued, among others, THI of New Mexico at Hobbs Center, LLC ("Hobbs Center"); THI of New Mexico, LLC ("THI-NM"); Fundamental Administrative Services, LLC ("FAS"); and Fundamental Clinical Consulting, LLC ("FCC") (collectively, "Plaintiffs"), Plaintiffs filed the lawsuit before this Court, under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, ("FAA"), seeking an order to compel Ms. Patton to arbitrate her claims asserted against them in the State Court Action, in accordance with the Arbitration Agreement, and staying this case and the State Court Action pending resolution of the matter through the arbitration process.  Plaintiffs simultaneously filed a Motion to Compel Arbitration requesting the same relief sought in their Complaint.

On January 3, 2012, this Court filed a Memorandum Opinion and Order (Doc. 27) granting Plaintiffs' request to compel arbitration, in accordance with the terms of the Arbitration Agreement, as to Ms. Patton's claims asserted in the State Court Action against Plaintiffs Hobbs Center and THI-NM, but denying the request to compel arbitration as to Ms. Patton's claims asserted against Plaintiffs FAS and FCC.  As relevant to the current motion, this Court ruled as follows:  (i) Mr. Patton's Estate is bound by the terms of the Arbitration Agreement, under third-party beneficiary law or equitable estoppel principles; (ii) Hobbs Center and THI-NM can enforce the Arbitration Agreement, but FAS and FCC cannot because FAS and FCC were

neither parties to the agreement nor third-party beneficiaries of the agreement; and (iii) the Arbitration Agreement was neither procedurally nor substantively unconscionable.

This Court, in refusing to invalidate the Arbitration Agreement on unconscionability grounds, reasoned that the clause in question was not so one-sided as to be substantively unconscionable, distinguishing this case from the New Mexico Supreme Court cases relied upon by Defendant, *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, 146 N.M. 256, and *Rivera v. American Gen. Fin. Servs. Inc.*, 2011-NMSC-033, 150 N.M. 398.   As relevant to this motion, the Court ruled as follows:

> Unlike the provisions in *Rivera* and *Cordova*, parts of this Exclusion Clause apply to both parties, allowing residents to assert an array of suits involving less than $2,500 and guardianship proceedings in court.  Residents can also force Hobbs Center to arbitrate certain claims that it might have against the resident, for example, tort actions for money damages for negligent or intentional destruction of facility property or injury to other residents or staff, declaratory judgment actions regarding resident rights and for injunctive relief, and defamation. Although the types of arbitrable claims Hobbs Center has may not be the most common claims it might assert, they are feasible, conceivable claims that are not outlandish.  In contrast, the arbitration clause in *Rivera* forced the borrower "to arbitrate *any* claim she may have."  *Rivera*, 2011-NMSC-033, ¶ 53 (emphasis added).  Similarly, the arbitration provision in *Cordova* gave the borrower "no rights under the form agreement to go to any court for *any reason whatsoever.*" *Cordova*, 2009-NMSC-021, ¶ 27 (emphasis added).

> Moreover, Defendant has not provided this Court with any evidence on which to base a conclusion of what the "most likely" claims are that either residents or nursing homes would bring.  Where, as here, the Arbitration Agreement confines some claims by both parties to arbitration and other claims by both parties to proceed in a court of law, a court needs evidence on which to base a finding of the one-sided nature of the respective claims of the parties that are confined to arbitration.  For example, this Court does not have any facts as to the percentage of collection actions Hobbs Center brings or that other like nursing homes bring in comparison to total lawsuits.  This Court could only speculate that collection claims are the "most likely" claims a nursing home would bring, and conversely, that tort actions are the "most likely" claims a resident would bring. Nor are these facts subject to judicial notice under Federal Rule of Evidence 201. Consequently, based on the inadequate facts in the record, the Court is unable to find that the Exclusion Clause results in a disparate impact on the parties, such that, in practice, the Arbitration Agreement results in an unreasonably one-sided

agreement that is substantively unconscionable.

(Mem. Op. and Order (Doc. 27) at 39-40.)

The Court alternatively explained in Footnote 9 of its Memorandum Opinion and Order that, even if the Arbitration Agreement were substantively unconscionable, the proper remedy would be to sever the Exclusion Clause[1] and proceed with arbitration:

> Unlike in *Cordova* and *Rivera*, here the Arbitration Agreement contains the following savings clause: "In the event a court having jurisdiction finds any portion of this Agreement unenforceable, that portion shall not be effective and the remainder of the Agreement shall remain effective." In determining whether a contract provision is severable, "the governing principle is the manifested intention of the parties in view of the nature of the contract." *Arrow Gas Co. of Dell City v. Lewis*, 71 N.M. 232, 239 (1963). If the language of the contract clearly indicates the intention of the parties to sever unenforceable provisions from the contract, the court should sever the void provision and enforce the remainder. *See Fancher v. Board of Com'rs of Grant County*, 210 P. 237, 248 (1921). *See also Security Serv. Fed. Credit Union v. Sanders*, 264 S.W.3d 292, 300 ("Severability is determined by the intent of the parties as evidenced by the language of the contract.").

> Here, the Arbitration Disputes Clause[2] applies to both parties. It compels arbitration for disputes between the parties "arising out of or relating to Resident's stay at the Health Care Center, the Health Care Center's Admission Agreement or breach thereof, or relating to the provision of care or services to Resident." Striking only the Exclusion Clause would mean that the Arbitration Disputes Clause would remain in effect and bind both the resident and nursing home to arbitrate the claims either would most likely bring against one another. For example, collection actions arise from the Admission Agreement and breach thereof, and thus, would be subject to arbitration if the Exclusion Clause alone were struck. Striking the Exclusion Clause thus eliminates the one-sided nature of the contract, comports with both the plain language of the savings clause and the policy behind the FAA, and promotes the central purpose of the parties in entering the agreement to arbitrate. Therefore, even if this Court concluded that the Arbitration Agreement were substantively unconscionable, the appropriate remedy would be to sever the Exclusion Clause and enforce the remainder of the Arbitration Agreement. The Court would thus still grant Plaintiff Hobbs Center's and THI-NM's request to compel Ms. Patton to arbitrate her claims against them.

---

1 The "Exclusion Clause" is the paragraph within the Arbitration Agreement that excluded certain causes of action from arbitration.

2 The "Arbitration Disputes Clause" refers to the paragraph within the Arbitration Agreement that generally required the parties to arbitrate disputes that arose between them.

(*Id.* at 41-42 n.9.)

Following the Court's entry of its Order, Plaintiffs FAS and FCC appealed the denial of their motion to compel arbitration to the Tenth Circuit Court of Appeals.  No further action has occurred in any arbitration or litigation in state court between Ms. Patton and the THI Plaintiffs because they were awaiting the Tenth Circuit's decision before proceeding. The Tenth Circuit affirmed this Court's decision in an opinion issued on December 3, 2012.  This Court received the mandate conferring jurisdiction back to this district court on December 27, 2012.  *See* Mandate (Doc. 37).[3]

In the meantime, on July 18, 2012, the New Mexico Court of Appeals decided the case of *Figueroa v. THI of New Mexico at Casa Arena Blanca LLC*, No. 30,477, slip op. (N.M. Ct. App. July 18, 2012).  That case does not involve any of the parties in this case.  However, the case involved the enforceability of the identical arbitration clause at issue in this case.  The New Mexico Court of Appeals concluded that the arbitration clause was unenforceable because it was substantively unconscionable under *Cordova* and *Rivera*.  *Figueroa*, No. 30,477, slip op. at 29.  The Court of Appeals in *Figueroa* also concluded that the Exclusion Clause could not be severed, and the Arbitration Agreement could not be enforced.  The New Mexico Court of Appeals cited to this Court's opinion and noted that it disagreed with this Court's conclusion on the enforceability of the identical arbitration clause.  *See id.* at 4 n.1.

The *Figueroa* appellants filed a Petition for Writ of Certiorari to the New Mexico Supreme Court on August 17, 2012.  The New Mexico Supreme Court denied the petition on October 3, 2012.  *See Figueroa v. THI of New Mexico at Casa Arena Blanca LLC*, No. 33,762

---

[3] The filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).  The filing of a non-frivolous § 16(a) appeal under the FAA also divests a district court of jurisdiction until the appeal is resolved on the merits.  *See McCauley v. Halliburton Energy Services, Inc.*, 413 F.3d 1158, 1160 (10th Cir. 2005).

(N.M. Sup. Ct. Oct. 3, 2012).[4]  Ms. Patton asks this Court to reconsider and reverse its prior order compelling her to arbitrate her claims with the THI Plaintiffs in light of the New Mexico Court of Appeals' *Figueroa* decision.

## II.   STANDARD

Federal Rule of Civil Procedure 60(b)(6) provides that a court may relieve a party from a final judgment or order for any reason that justifies relief.  Fed. R. Civ. P. 60(b)(6).  "Rule 60(b)(6) has been described as a 'grand reservoir of equitable power to do justice in a particular case.'"  *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 579 (quoting *Pierce v. Cook & Co.*, 518 F.2d 720, 722 (10th Cir. 1975) (en banc)).  However, a movant seeking relief under Rule 60(b)(6) must "show 'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).  Rule 60(b) is not intended to be a substitute for direct appeal.  *Cashner*, 98 F.3d at 579.

Generally, post-judgment changes in the law by themselves do not constitute extraordinary circumstances for relief under Rule 60(b)(6).  *See Agostini v. Felton*, 521 U.S. 203, 238 (1997) ("Intervening developments in the law by themselves rarely constitute extraordinary circumstances required for relief under Rule 60(b)(6), the only remaining avenue for relief on this basis from judgments lacking any prospective component."); *Van Skiver v. United States*, 952 F.2d 1241, 1245 (10th Cir. 1991) ("[W]hen the post-judgment change in the law did not arise in a related case, we have held that '[a] change in the law or in the judicial view of an established rule of law' does not justify relief under Rule 60(b)(6).") (quoting *Collins v. City of Wichita*, 254 F.2d 837, 839 (10th Cir. 1958)).  As the Tenth Circuit explained, "[l]itigation must end some time, and the fact that a court may have made a mistake in the law when entering

---

4 *See* Bar Bulletin, Official Publication of the State Bar of New Mexico, Vol. 51, No. 42 (Oct. 17, 2012) (noting that the Order Denying Petition for Writ of Certiorari in *Figueroa v. THI of N.M.* was filed on Oct. 3, 2012).

judgment, or that there may have been a judicial change in the court's view of the law after its entry, does not justify setting it aside." *Collins*, 254 F.2d at 839 (affirming denial of Rule 60(b) relief for litigants who, after exhausting appellate remedies, attempted to obtain relief from final judgment against them because of a post-judgment favorable change in the law in a separate case with different parties but involving the validity of the same statute).

Where a change in the law combines with a unique circumstance that makes the situation extraordinary, however, a court may grant Rule 60(b)(6) relief. *See Pierce v. Cook & Co., Inc.*, 518 F.2d 720, 723 (10th Cir. 1975).  For example, the Tenth Circuit in *Pierce* concluded that relief was appropriate under Rule 60(b)(6) in a federal case based on diversity jurisdiction following a post-judgment change in state law because it was dealing with a particularly unusual circumstance -- the plaintiff in the federal case had appealed and lost, but the precedent on which the plaintiff lost was reversed in another case arising out of the very same automobile accident. *See id.* at 722-24.  The Tenth Circuit noted, "In diversity jurisdiction cases the results in federal court should be substantially the same as those in state court litigation arising out of the same transaction or occurrence." *Id.* at 723.  Since *Pierce*, the Tenth Circuit has clarified and reaffirmed that a change in the law is not, alone, such an extraordinary circumstance to justify Rule 60(b)(6) relief where the post-judgment change came in an unrelated case. *See Van Skiver*, 952 F.2d at 1245.

Although this case does not involve the same transaction or occurrence as to the underlying personal injuries, this case is related to *Figueroa* because the very same arbitration language exists in the admission contracts in *Figueroa* and here.  The central issue of the interpretation and enforceability of the Arbitration Agreement is the same in both *Figueroa* and here.  To let this Court's decision stand would create a substantially different result than in the

state court litigation arising out of the very same contractual language, due entirely to this Court's diversity jurisdiction, a result the Tenth Circuit cautioned against.  Thus, this case falls within the *Pierce* exception permitting a court to vacate a judgment following a post-judgment change in state law in a related case.

The THI Plaintiffs argue that Rule 60(b)(6) is not a vehicle for relief where the movant chose not to appeal the initial decision.  The Tenth Circuit, however, rejected a similar contention in *Adams v. Merrill Lynch, Pierce, Fenner & Smith*, 888 F.2d 696 (10th Cir. 1989).  In *Adams*, the plaintiff investors sued the defendant for claims under the Securities Act of 1933, the Securities Exchange Act of 1934, the securities laws of the State of Oklahoma, and for other state law claims.  *See id.* at 697.  The defendant filed a motion to compel arbitration of the claims arising under the Securities Exchange Act of 1934 and of the state and common law claims, and a motion to stay the action until the completion of arbitration.  *Id.*  The district court granted the defendant's motion to compel arbitration of the state and common law claims, denied the motion to compel arbitration of the claims arising under the Securities Exchange Act of 1934, and granted the stay.  *Id.* at 697-98.  The investors appealed the order compelling arbitration of the state and common law claims, and the defendant filed a cross-appeal challenging the denial of the motion to compel arbitration of the federal claims.  *Id.* at 698.  The defendant, however, dismissed its cross-appeal based upon a stipulation of the parties.  *Id.*  Following the issuance of a decision of the Supreme Court, the defendant moved the district court pursuant to Rule 60(b)(6) to reconsider its ruling partially denying arbitration, which the district court granted.  *Id.*  Subsequently, in a third and final order, the district court granted the defendant's motion to compel arbitration of the other remaining claims in the case.  *Id.*

On appeal, the plaintiffs argued that the district court erred in granting the defendant

relief under Rule 60(b)(6). *Id.* at 702. The Tenth Circuit rejected the plaintiffs' contentions that a change in law is not a substitute for appeal and does not justify relief under Rule 60(b)(6). *Id.* The Tenth Circuit affirmed the district court's ruling on the Rule 60(b)(6) motion, stating that a change in relevant case law by the United States Supreme Court warrants relief under Rule 60(b), and thus implicitly finding the fact that Merrill Lynch voluntarily dismissed their appeal to be of little consequence. *See id.*

Consequently, here the fact that Defendant did not appeal the ruling for which they seek Rule 60(b)(6) relief is not necessarily dispositive. Although Defendant did not appeal the ruling at issue here, the case has been before the Tenth Circuit Court of Appeals regarding whether FAS and FCC can compel arbitration, and this Court just recently received the mandate. The motion to reconsider has been pending while the appeal was being resolved. The federal courts have thus not fully disposed of the case. Moreover, the parties have taken no action in any arbitration or litigation in state court while they awaited a decision by the Tenth Circuit, so reversing this Court's initial judgment would cause minimal disruption or prejudice to the case. The Court will therefore turn to the substantive issues underlying Defendant's Rule 60(b)(6) motion -- whether *Figueroa* presents an extraordinary change in the applicable law that justifies relief.

## III.   ANALYSIS

### A.  State law, not Federal Evidentiary Law, Controls the Outcome of this Case

The New Mexico Court of Appeals in *Figueroa* concluded that the plain terms of the Arbitration Agreement were enough evidence to find it unconscionable because "common sense" dictates that the exempted claims were those a nursing home were most likely to pursue, and conversely, the claims subject to arbitration were those most likely that a resident would pursue.

*See Figueroa*, No. 30,477, slip op. at 25.  In a subsequent decision, the New Mexico Court of Appeals has indicated that factual evidence could be developed regarding the one-sided nature of claims exempted from arbitration, but that it is the arbitration proponent's burden to develop that record where the language of the terms themselves, based on common sense, are sufficient evidence that the terms are unfairly one-sided in nature.  *See Ruppelt v. Laurel Healthcare Providers, LLC*, No. 30,191, slip op. 7 (N.M. Ct. App. Aug. 16, 2012).  The THI Plaintiffs argue that this Court need not follow the *Figueroa* decision on unconscionability because federal law controls evidentiary issues, and this Court concluded that the parties did not present sufficient evidence of the most likely claims each would bring.

Section 4 of the Federal Arbitration Act ("FAA") provides:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration *may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28,* in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (emphasis added).  The FAA itself does not grant the federal courts jurisdiction over arbitration disputes; instead, the Act requires an "independent jurisdictional basis" for bringing the suit before the federal court.  *Hall Street Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008) (citation omitted).  This foundational jurisdiction exists only if the parties' dispute is rooted in a federal question or diversity of the parties.  *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983).  *See also* 28 U.S.C. §§ 1331-32.  This Court previously determined that jurisdiction here is based on diversity.  (*See* Mem. Op. and Order (Doc. 24) at 10.)

In federal diversity cases, courts must apply federal procedural rules and state substantive law.  *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78

(1938).  "[I]n diversity cases the federal courts must follow the law of the State as to burden of proof."  *See Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945) (citing *Cities Service Oil Co. v. Dunlap*, 308 U.S. 208 (1939)).  *See also Great-West Life Assur. Co. v. Levy*, 382 F.2d 357, 359 (10th Cir. 1967).

The New Mexico Court of Appeals in *Figueroa* determined that, relying on common sense, the plain terms of the Arbitration Agreement were sufficient to conclude the agreement was substantively unconscionable.  If this Court were to require more evidence than the terms of the very same Arbitration Agreement, it would result in the opposite result of that reached by the state courts regarding the same issue.  This Court's contrary decision did not rely on the admissibility of a particular piece of evidence under the Federal Rules of Evidence; rather, it relied on the amount and quality of evidence necessary to show unconscionability, which is a question of burden of proof.  The *Figueroa* decision, rather than federal evidentiary rules, therefore controls whether the Arbitration Agreement in this case is unconscionable.

### B.  The *Figueroa* Case is Sufficiently Authoritative to Justify Relief

The THI Plaintiffs additionally argue that *Figueroa* is not controlling authority because the final arbiter of New Mexico law is the New Mexico Supreme Court, not the Court of Appeals.[5]  "[T]he highest court of the state is the final arbiter of what is state law," and in diversity cases, its pronouncements must be accepted by federal courts as defining state law. W*est v. American Tel. & Tel. Co*., 311 U.S. 223, 236 (1940).  A federal court sitting in diversity, however, must also follow the decisions of intermediate courts of appeal so long as it is not clear that the highest court in the state would decide otherwise.  *See id.* at 237.  To act otherwise and

---

[5]  The THI Plaintiffs also argued that *Figueroa* is not a final decision because the writ of certiorari was pending, but that argument is moot now that the New Mexico Supreme Court denied the petition for writ of certiorari.  *See State v. Martinez*, 2011-NMSC-010, ¶ 10, 149 N.M. 370 ("Final is defined as any case where  a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.") (internal quotations omitted).

allow federal courts to be free to choose their own rules of decision whenever the highest court of the state has not spoken, would thwart the policy of "avoid[ing] the maintenance within a state of two divergent or conflicting systems of law, one to be applied in the state courts, the other to be availed of in the federal courts, only in case of diversity of citizenship."  *Id.* at 236.  The United States Supreme Court has therefore explained a federal court's obligation to follow intermediate state appellate courts as follows:

> A state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them. In those circumstances a federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable. State law is to be applied in the federal as well as the state courts and it is the duty of the former in every case to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of 'general law' and however much the state rule may have departed from prior decisions of the federal courts.

> Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.  This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court.

*Id.* at 236-37 (internal citations omitted).  *See also Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Sys., Inc.*, 680 F.3d 1194, 1204 (10th Cir. 2011) ("Where the state's highest court has not addressed the issue, we still follow the state's intermediate court decisions absent convincing evidence that the highest court would decide otherwise.") (internal quotations omitted).

Although this Court initially made an "*Erie* guess" for what it believed the New Mexico Supreme Court would decide in this case, the Court cannot lightly disregard the contrary opinion

by the New Mexico Court of Appeals.  This Court reached the opposite result, but it found the issues to be close calls.  The reasoning of the *Figueroa* decision, and its application of prior New Mexico Supreme Court decisions, including *Cordova* and *Rivera*, is not unsound.  Consequently, this Court cannot say that there is convincing evidence that the New Mexico Supreme Court would decide otherwise such that this Court should not follow the New Mexico Court of Appeals, especially in light of the New Mexico Supreme Court's refusal to review the *Figueroa* decision.  Moreover, subsequent panels of the New Mexico Court of Appeals have relied on and applied the *Figueroa* decision.  *See*, *e.g.*, *Ruppelt v. Laurel Healthcare Providers, LLC*, No. 30,191, slip op. at 6-8 (N.M. Ct. App. Aug. 16, 2012).  Principles of federalism and fairness compel this Court to reconsider its prior Memorandum Opinion and Order to ensure that the parties sitting in diversity before it are subject to the same state law as they would be if in state court.  *See Guaranty Trust Co.*, 326 U.S. at 109 ("[I]n all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court. The nub of the policy that underlies *Erie R. Co. v. Tompkins* is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result.").  This Court will therefore follow the state law, as announced in the *Figueroa* decision, so long as that decision does not violate federal law as set forth in the FAA.

### C.  The FAA does not preempt the *Figueroa* decision

The THI Plaintiffs contend that this Court should not adhere to the *Figueroa* decision because it is preempted by the FAA.  The THI Plaintiffs argue that the *Figueroa* opinion

disfavors arbitration by imposing a "most likely claims" rule that is not a generally applicable contract defense. They also contend that the *Figueroa* court, by refusing to enforce the savings clause, disregarded general state contract law and struck the entire arbitration agreement because of an antipathy for arbitration. The Court will consider each argument in turn.

The FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[C]ourts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1745 (2011) (internal citation omitted). The FAA thus "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (quoting *Moses H. Cone*, 460 U.S. at 25 n.32).

Arbitration agreements, however, may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. *Rent-A-Center, West, Inc. v. Jackson*, __ U.S. __, 130 S.Ct. 2772, 2776 (2010). Nevertheless, in applying state law, a court may not construe an arbitration agreement differently from the manner in which it otherwise construes non-arbitration agreements under state law. *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997) (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)). In applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989). "[T]he federal policy is simply to ensure the enforceability, according to their terms,

of private agreements to arbitrate." *Id.* at 476. "[I]t is only when '[a] state-law principle . . . takes its meaning precisely from the fact that a contract to arbitrate is at issue' that the state law will be preempted by the FAA." *Avedon*, 126 F.3d at 1287 (quoting *Perry*, 482 U.S. at 492 n.9). This analysis is straightforward when the state law prohibits outright the arbitration of a particular type of claim. *Conception*, 131 S.Ct. at 1747. "But the inquiry becomes more complex when a doctrine normally thought to be generally applicable, such as duress or . . . unconscionability, is alleged to have been applied in a fashion that disfavors arbitration." *Id.*

### 1. The New Mexico Court of Appeals' unconscionability analysis did not violate the FAA

The THI Plaintiffs describe the *Figueroa* decision as applying a "most likely claims" rule that is unique to arbitration agreements and that imposes an equivalency-of-obligations requirement not required of other contracts. The Court disagrees. The New Mexico Court of Appeals determined that the Arbitration Agreement was unreasonably one-sided, but it did not thereby impose a rule that all arbitration agreements must have equivalent obligations. The Court of Appeals made clear that consideration and unconscionability are separate analyses under New Mexico law. *See Figueroa*, No. 30,477, slip op. at 15. *See also Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 791-92 (8th Cir. 1998) (examining issues of mutuality of obligation and unconscionability separately). New Mexico law does not require mutuality of remedy for a court to order specific performance under a contract. *See McKinney v. Gannett Co., Inc.*, 817 F.2d 659, 672 n.8 (10th Cir. 1987). *See also Ruegsegger v. Western NM Univ. Bd. of Regents*, 2007-NMCA-030, ¶ 19, 141 N.M. 306 (explaining that there may be adequate consideration to form a contract, even though the consideration provided by both parties is not identical). It is also true that New Mexico recognizes the equitable doctrine of unconscionability, rooted in

15

public policy, which allows a court to refuse to enforce a contract that is unreasonably one-sided. *See Cordova*, 2009-NMSC-021, ¶¶ 21, 25.  These two doctrines are not mutually exclusive.  A degree of inequality in contractual obligations is permissible under New Mexico law, but when the inequality becomes so disproportional that the terms are grossly unfair to a party, New Mexico law also allows a court to refuse to enforce such a disparate agreement on grounds of equity.  *See id.* ¶¶ 21-25.  Consequently, finding the Arbitration Agreement unconscionable for its grossly unreasonable terms favoring the drafter, does not establish that the Court of Appeals was running afoul of New Mexico contract law that does not generally require mutuality of obligation.

The THI Plaintiffs further argue that the "most likely claims" rule is unique from general contract law because it requires no proof, effectively relieving the resident of its burden of proof on the defense of unconscionability.  The Court disagrees that New Mexico law has shifted the burden of proof on unconscionability in arbitration agreements.  Substantive unconscionability, unlike procedural unconscionability, concerns the legality and fairness of the contract terms themselves.  *See Cordova*, 2009-NMSC-021, ¶¶ 22-23.  The *Figueroa* court merely determined that the terms in this Arbitration Agreement were so plainly one-sided that the terms, alone, met the resident's burden of proof to show substantive unconscionability.  That conclusion is not the same as requiring no proof at all.

As for the THI Plaintiffs' argument that the "most likely claims" rule by definition only applies to arbitration agreements, that contention is easily dismissed.  The *Figueroa* decision did not create a "most likely claims" rule – the THI Plaintiffs coined this phrase.  Rather, the New Mexico Court of Appeals applied the generally applicable unconscionability law against grossly unreasonable one-sided contracts.  In the context of this arbitration agreement, the unreasonably

one-sided terms happened to be the claims to which each party was subject to arbitration.  The New Mexico Court of Appeals found objectionable, not the fact of arbitration, but the grossly unreasonable, one-sided nature of the agreement to arbitrate.  In doing so, it relied on the *Cordova* opinion, which in turn, relied on unconscionability law derived in part from non-arbitration cases and treatises.  *See Cordova*, 2009-NMSC-021, ¶¶ 21-24 (citing *Guthmann v. La Vida Llena*, 103 N.M. 506, 510 (1985); 1 E. Allan Farnsworth, *Farnsworth on Contracts* § 4.28, at 585 (3d ed. 2004)).  Because the FAA expressly provides for adhering to state law in determining contract defenses, such as unconscionability, the *Figueroa* decision, which purports to apply general rules of contract law in its unconscionability analysis, does not violate the FAA. *Cf. Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 169-170 & n.11 (5th Cir. 2004) (following decision of Louisiana intermediate appellate court that arbitration clause was unconscionable for its one-sidedness where state decisions purport to apply general rules of Louisiana contract law, did not express view that arbitration is inferior to litigation, and based opinion on generally applicable codal provisions and learned commentary, not sources applicable specifically to arbitration).

## 2.  The New Mexico Court of Appeals did not violate the FAA in its severance analysis

In New Mexico, generally, when faced with an unconscionable provision, a court may refuse to enforce the contract, enforce the remainder of the contract without the unconscionable provision, or may limit the application of any unconscionable provision so as to avoid any unconscionable result.  *Cordova*, 2009-NMSC-021, ¶ 39 (quoting *Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003-NMSC-011, ¶ 15, 133 N.M. 661).  According to the Restatement (Second) of Contracts, when a portion of an agreement is unenforceable, "a court may nevertheless enforce the rest of the agreement in favor of a party who did not engage in serious misconduct if

the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange."   Restatement (Second) of Contracts § 184(1).   "Whether the performance is an essential part of the agreed exchange depends on its relative importance in the light of the entire agreement between the parties."  *Id.* § 184, cmt. a.

The Arbitration Agreement contains the following savings clause: "In the event a court having jurisdiction finds any portion of this Agreement unenforceable, that portion shall not be effective and the remainder of the Agreement shall remain effective."  In determining whether a contract provision is severable, "the governing principle is the manifested intention of the parties in view of the nature of the contract."  *Arrow Gas Co. of Dell City v. Lewis*, 71 N.M. 232, 239 (1963).  If the language of the contract clearly indicates the intention of the parties to sever unenforceable provisions from the contract, the court should sever the void provision and enforce the remainder.  *See Fancher v. Board of Com'rs of Grant County*, 28 N.M. 179, 210 P. 237, 248 (1921).  Courts severing illegal provisions and compelling arbitration have generally done so where the agreements contained a severability clause and a discrete unenforceable provision. *See Booker v. Robert Half Intern., Inc.*, 413 F.3d 77, 84 (D.C. Cir. 2005).

This Court's prior opinion and the *Figueroa* decision are at odds concerning whether the unconscionable provisions in the Arbitration Agreement are sufficiently discrete to sever.  This Court construed what it called the Exclusion Clause, the provision that exempted certain claims from arbitration, to be the offending portion of the Agreement and sufficiently discrete that it could be severed and the remainder of the Arbitration Clause enforced.  In contrast, the New Mexico Court of Appeals construed the "portion" of the Arbitration Agreement that was unenforceable to include both the Exclusion Clause and the "Arbitration Disputes Clause."  The *Figueroa* court determined that both provisions were integral to the Arbitration Agreement, and

18

that the Exclusion Clause alone could not be severed.  *Figueroa* relied on both *Cordova* and *Rivera*, in both of which the New Mexico Supreme Court refused to re-fashion the one-sided arbitration provisions in an attempt to create a fair and balanced arbitration agreement.  *Cordova*, 2009-NMSC-021, ¶¶ 39-40; *Rivera*, 2011-NMSC-031, ¶ 56.  Instead, the court "str[uck] down the arbitration clause in its entirety to avoid a type of judicial surgery that inevitably would remove provisions that were central to the original mechanisms for resolving disputes between the parties."  *Cordova*, 2009-NMSC-021, ¶ 40.

        After reviewing the *Figueroa* decision and its application of New Mexico law, this Court cannot conclude that the New Mexico Court of Appeals' refusal to enforce the savings clause violated the FAA.  General New Mexico contract law requires the court to determine what the parties intended.  In this case, the question is what the parties intended the language of the savings clause to mean in a situation where what is unconscionable, and therefore unenforceable, is the grossly unbalanced terms of what claims are subject to arbitration.  The "portion" of the Arbitration Agreement that is unenforceable could reasonably be construed as including both the Arbitration Disputes Clause and the Exclusion Clause.  After all, reading both clauses is necessary in order to determine the one-sided nature of the agreement.  The Court of Appeals applied general contract principles to find that the unbalanced terms infected the arbitration clause as a whole and were integral to the workings of the entire Arbitration Agreement.  Consequently, the intent of the parties was not so clear as to what terms should be severed in the event the unbalanced terms regarding what claims should and should not be arbitrated were found to be unconscionable.  *Cf. Iberia Credit Bureau*, 379 F.3d at 171 (holding that severability clause could not save one-sidedness of duty to arbitrate because it "would require not that we excise an invalid excrescence and then send the pared-down contract to arbitration but that we

redraft the contract to add important new material – a duty on Centennial's part to arbitrate"). Under the FAA, arbitration "is a matter of consent, not coercion." *Volt*, 489 U.S. at 479. The Court of Appeals essentially concluded that it was not clear that the parties consented to arbitrate certain claims when the balance of the bargain of which claims to arbitrate and which to litigate was found to be too unconscionable to enforce. The New Mexico Court of Appeals purports to apply general rules of contract law, and this Court will not conclude that it is applying different rules for arbitration agreements than other contracts.

## IV.    CONCLUSION

Principles of federalism, comity, and fairness compel this Court under Federal Rule of Civil Procedure 60(b)(6) to vacate its prior Memorandum Opinion and Order and follow the New Mexico Court of Appeals' *Figueroa* decision. The underlying state litigation and arbitration has essentially been stayed while the parties awaited a decision by the Tenth Circuit Court of Appeals regarding whether FAS and FCC can compel arbitration, so reversing this Court's initial judgment would cause minimal disruption or prejudice to the underlying case. The strong policy of respecting finality of judgments is not as strong here as the competing principles of federalism, comity, and fairness. The Court will therefore reverse the portion of its prior Memorandum Opinion and Order that compelled arbitration between Defendant and the THI Plaintiffs.

**IT IS THEREFORE ORDERED** that

1. Defendant Lillie Mae Patton's Motion to Reinstate and Reconsider (**Doc. 34**) is **GRANTED**;

2. The Court's prior Memorandum Opinion and Order (**Doc. 27**) and Final Judgment

(**Doc. 28**) are **REVERSED** and **VACATED** to the limited extent that the Court ordered Defendant Patton to arbitrate her claims asserted in the State Court Action against Plaintiffs THI of New Mexico at Hobbs Center, LLC, and THI of New Mexico, LLC;

3. Plaintiffs THI of New Mexico at Hobbs Center, LLC, and THI of New Mexico, LLC's claim to compel arbitration of Defendant's claims asserted in the First Judicial District Court of New Mexico, *Patton v. Fundamental Long Term Care Holdings, LLC, et al.*, D-101-cv-2011-01388, against Plaintiffs THI of New Mexico at Hobbs Center, LLC, and THI of New Mexico, LLC is **DENIED**; and

4. Plaintiffs THI of New Mexico at Hobbs Center, LLC, and THI of New Mexico, LLC's complaint to compel arbitration is **DISMISSED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**